# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JIMMY CRUZ,

    Petitioner,

v.                                                                 CASE NO. 8:17-cv-122-T-02AEP

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

## ORDER DENYING PETITION

The Court has before it Petitioner's habeas petition under 28 U.S.C. § 2254. No hearing is necessary. The Court denies the petition and denies a certificate of appealability.

Petitioner Jimmy Cruz entered into a negotiated guilty plea to manslaughter with a firearm, a reduced charge and agreed-upon 12-year prison sentence, followed by 10 years' probation. (A at 836).[1] This plea was entered after the trial court denied Cruz's motion to dismiss the charge based on Florida's "stand your ground"

---

[1] The record is found in bulk paper form, index at Doc. 10, denominated by exhibits A through H. The exhibits in this appendix are organized by capital letter, a capital letter followed by a number, or a capital letter followed by a number and lower-case letter, such as A (the entire record of proceedings in the trial court), F3 (the order denying amended rule 3.850 motion), and F3b (the transcript of the plea colloquy). If necessary, a page number will follow, for example "F3b at ___."

law.

Petitioner raises five grounds of ineffective assistance of trial counsel. He states counsel was constitutionally ineffective for failing to: 1) file for rehearing concerning the trial court's erroneous consideration of jury instructions; 2) properly argue the trial court's abuse of discretion considering his right not to testify, thereby allowing the State to shift the burden of proof to Petitioner; 3) object to the trial court's failure to properly weigh the credibility of witnesses; 4) adopt Petitioner's pro se motions to reconsider pretrial motions; and 5) avoid the cumulative prejudicial effect of these enumerated errors.

The State does not contest exhaustion or timeliness. The State argues that Petitioner has not shown by clear and convincing evidence that the state court decision is contrary to or involved an unreasonable application of clearly established federal law; nor has he shown an unreasonable determination of the facts in light of the evidence presented. The undersigned agrees. This is not a close case and Petitioner got exactly what he bargained for in his negotiated plea.

## BACKGROUND FACTS

In 2011 Petitioner shot one Walter Revear in the head at a Tampa saloon, killing him. (A at 14–15). The State charged Petitioner with second degree murder while possessing and discharging a firearm. (A at 28–30).

As this was an affray, Petitioner's lawyer moved to dismiss the charge under Florida's "stand your ground" statute, section 776.032 of the Florida Statutes. (A at 104–19). The state circuit court held evidentiary hearings on this matter in June 2012. (A at 233–672). Seven witnesses testified. (A at 241–87; 288–386; 392–503; 505–34; 540–628).

The trial court denied the "stand your ground" motion to dismiss in July 2012 in a lengthy order. (A at 159–75). The court stated in part:

> Section 776.032, Florida Statutes, commonly known as the "Stand Your Ground" statute, provides that where a person is justified in using force as permitted in Sections 776.012, 776.013, or 776.031, that person is immune from criminal prosecution and civil action for the use of such force, unless the victim is a law enforcement officer. *See* § 776.032, Fla. Stat. (2005). When a criminal defendant files a motion to dismiss [footnote 6 omitted] on the basis of the Stand Your Ground statute, the trial court must decide the factual question of whether the statutory immunity applies. *See Dennis v. State*, 51 So.3d 456, 458 (Fla. 2010) [footnote 7 omitted.] As such, when a motion to dismiss or other motion or petition filed pursuant to Rule 3.190(a), is properly filed, based on the Stand Your Ground statute, a trial court "must decide the matter by confronting and weighing only factual disputes. The court may not deny a motion simply because factual disputes exist." *See id*. at 459, citing *Peterson*, 983 So.2d at 29. Upon presentation of live testimony at an evidentiary hearing, the trial court shall weigh the credibility of the witnesses, make findings of fact based on that evidence, and apply the preponderance of the evidence standard in making its final determination. *See Horn v. State*, 17 So.3d 836, 839 (Fla. 2d DCA 2009). Defendant bears the burden of showing by a preponderance of the evidence, that he is entitled to immunity under section 776.032, Florida Statutes. *See Horn*, 17 So.3d at 839; *see also Peterson*, 983 So.2d at 28.

(A at 168). The court then quoted from sections 776.012 and 776.013 of the Florida

Statutes (2005) and concluded, "Although Defendant argued for immunity under Sections 776.012 and 776.013, the Court finds that immunity under neither section is warranted, as Defendant did not prove by a preponderance of the evidence that he was entitled to such immunity." (A at 169). The court rejected the State's argument that Petitioner was not entitled to immunity because he was engaged in unlawful activity. (A at 169-70). However, the court found Petitioner was not justified in using deadly force for two reasons:

> First, the Court finds that Defendant did not "meet force with force," as is required by Section 776.013(3), and that Defendant's use of deadly force was excessive under the facts and circumstances of this case. Second, the Court finds that Defendant did not have a reasonable belief that he or his brother, M. Cruz, were in danger of death or great bodily harm, so as to justify the use of deadly force. To justify the use of force, Section 776.013(3), Florida Statutes, requires an individual to "*meet force with force, including deadly force.*" See § 776.013(3), Fla. Stat. (2005) (emphasis added.) This Court construes such language as a requirement that to justify the use of force, an individual must use an amount of force equivalent to that which is being responded to. Thus, to justify responding with force to prevent death or great bodily harm, or to prevent the commission of a forcible felony, an individual must respond with an amount of force comparable to that which was presented to the defendant. See § 776.013(3), Fla. Stat. (2005) [footnote 8 omitted.]

(A at 170).

The court concluded, "Simply put, the Court finds that Defendant brought a gun to a fist fight. Defendant responded, with deadly force, to a fist fight between his brother [M. Cruz] and the victim, J. Revear. No witness testified that J. Revear ever

4

presented a gun to Defendant or M. Cruz, or that J. Revear ever threatened to shoot Defendant or M. Cruz. Vickers testified that J. Revear did not carry any weapons with him to the Interstate Lounge that night, and also did not acquire any weapons while he was there that night. (*See* Transcript p. 368). Vereen also testified that she never saw J. Revear with any weapons that night. (*See* Transcript p. 348). Detective Danny Rhodes testified that, through his investigation, he never recovered any weapon from J. Revear's body and never learned from any witness that J. Revear possessed any weapons that night. (*See* Transcript p. 127, 151, attached)." (A at 171).

The court observed there was conflicting testimony as to who initiated the fight between M. Cruz and Revear and whether M. Cruz even actually hit Revear, but all testimony "indicates that only fists were used between M. Cruz and J. Revear." (A at 171). The court rejected the testimony that M. Cruz was kicked once he fell to the ground and found more credible that M. Cruz was "punched only once by J. Revear." (A at 171). Any threat from the females who ignited tasers or presented mace had subsided by the time J. Revear punched M. Cruz. (A at 171). The court reviewed the testimony and the video regarding the conflict with the females who wielded the tasers and mace and found they were not part of the J. Revear group and were no longer threatening Cruz when the Revear conflict began:

> [A]ll available evidence indicates that J. Revear was not involved in the altercation between the females and Defendant, and that the only threat

5

> Defendant was responding to at the time he shot J. Revear was a punch. Under these circumstances, the Court finds that Defendant's use of deadly force was excessive when compared to the type of force to which he was responding, which was, according to all available testimony, only the use of hands. The Court finds that Defendant did not meet force with force when he used a gun to respond to the force used by J. Revear against M. Cruz.

(A at 172).

The court also found any belief Petitioner had that he or his brother were in danger of death or great bodily harm was not reasonable:

> To justify the use of deadly force in defense of others, a "person must be *reasonably certain* that the person whom they are defending is in immediate danger of death or great bodily harm." *See Montanez v. State,* 24 So.3d 799, 803 (Fla. 2d DCA 2010) (emphasis added). To be reasonably certain, a defendant must have known or should have known that death or great bodily harm was certain to occur. *Id.* This determination is in accord with an objective, reasonable person standard. *See id.* (citing Fla. Std. Jur Instr. Crim. 3.6(f) (2010), and explaining that under the objective, reasonable person standard, persons making claims of self-defense or defense of others must be judged by the circumstances with which they were faced at the time deadly force was used.) Defendant requests that this Court find that he had a reasonable belief that his brother was in danger of death or great bodily harm because of the hectic, intense crowd he faced that night at the Interstate Lounge. (*See* Transcript p. 420, attached). The Court declines to make such a finding.

(A at 172–73).

The court found M. Cruz was punched only once and neither the victim Revear, nor anyone else, threatened either Petitioner or his brother M. Cruz with a weapon. "Although M. Cruz testified he thought he saw someone with a gun, he could not

6

confirm who it was or that it was J. Revear. (*See* Transcript p. 268-69)." (A at 174). The only weapons out that night—the tasers and mace— "were no longer involved in the altercation at the time M. Cruz was punched." (A at 174). Based on these facts, a reasonable person in Cruz's position would not be in fear of death or great bodily harm. (A at 174). The record showed that Petitioner threw a drink at this rowdy, 1:30 a.m. crowd in the saloon parking lot, which precipitated a fight. (A at 163–67). When Petitioner's brother was getting the worst of the fracas, Petitioner went to his car, retrieved his .40 caliber Glock semi-automatic pistol, shot the brawling victim in the head, and fled. There was no evidence of any other firearm beyond Petitioner's.

The court concluded Petitioner had not shown by a preponderance of the evidence he was entitled to statutory immunity under the "stand your ground" statute. However, he was free to make this argument to the jury as an affirmative defense and go to trial on the charges. (A at 174.).

In response to the trial court's order, Petitioner sought an immediate writ of prohibition in the Florida Second District Court of Appeal, to block the court from moving forward to trial. (A at 183-211). The appellate court denied the petition without an opinion. (A1); *Cruz v. State*, 100 So. 3d 687 (Fla. 2d DCA 2012).

Not to be daunted, Petitioner then filed a habeas corpus petition here in federal court in early 2013. He alleged that his pretrial detention was unconstitutional

7

because he was entitled to immunity under the Florida "stand your ground statute." (H1). This Court dismissed the petition without prejudice because Petitioner failed to show why his claims could not be reviewed in state court. (H2); *Cruz v. Gee*, No. 8:13-cv-763-T-30TBM, 2013 WL 1278952 (M.D. Fla. Mar. 28, 2013).

Upon remand from the federal habeas detour, Petitioner entered a negotiated guilty plea back in state court. On March 22, 2013, he pled to the reduced charge of manslaughter with a firearm in exchange for a prison sentence of 12 years followed by 10 years' probation (allowing for early termination after 5 years) and reserving his appellate rights. (A at 836–39).

Because Respondent concedes, and the undersigned agrees, that the instant petition is timely and is exhausted, the Court does not recite the appellate and collateral time frames in detail here. The relevant summary requires examination of how the state postconviction courts handled these five claims.

On November 25, 2015, the postconviction court summarily denied all of Petitioner's claims that he had set forth in an amended motion for state postconviction relief. (F3). The postconviction court attached to its order the plea form; March 22, 2013 plea transcript; judgment and sentence; July 10, 2012 order denying the motion to dismiss; and transcripts from the "stand your ground" hearing on June 28-29, 2012; as well as Petitioner's amended motion for postconviction relief and associated

memorandum. (F3 at 11).

The court observed that Petitioner had pled guilty. To find counsel ineffective, therefore, the deficiency must have affected the plea process so that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (F3 at 3–4, citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984) and *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The court further observed a claim can be summarily denied when the record "conclusively refutes the allegations and demonstrates that the defendant is not entitled to relief." (F3 at 4).

## ANALYSIS

The postconviction court denied ground one because Petitioner could not show prejudice in counsel's failure to move the court to rehear its denial of his motion to dismiss based on the court's conclusion that meeting force with force meant "comparable force." The court cited Petitioner's plea colloquy where he agreed there was no other "discovery, investigation, or work" he wanted his attorney to do and he understood he was giving up his right to having the jury determine whether he was guilty or not. (F3 at 6). Because Petitioner testified there was no other work he wanted his attorney to do before he pled to the reduced charge, Petitioner could not show that his counsel's failure to move for rehearing prejudiced him. (F3 at 6).

9

Relying on the court's order and the stand your ground hearing testimony, the postconviction court further concluded that even if counsel had filed a motion for rehearing, it would have been denied. (F3 at 6–7).

As to ground two, the State's mistaken claim that Cruz was required to testify to assert self-defense, counsel *did* object to the State's argument. (F3 at 7). The postconviction court held Petitioner could show no prejudice in defense counsel's failure to argue further that the court abused its discretion in considering Cruz's right not to testify where Cruz testified at his plea colloquy there was no other discovery, investigation, or work he wished his counsel to do. Therefore, Petitioner could not show prejudice: the reasonable probability that he would not have pled to the reduced charge. Even if counsel had made the argument, it would not have changed the outcome of the hearing. (F3 at 8).

As to ground three, counsel's failure to properly argue witness impeachment, the postconviction court determined Petitioner had failed to show prejudice because he had agreed when tendering his plea that there was no other investigation, discovery, or work he wished his counsel to do. (F3 at 8–9). He, therefore, could not show the reasonable probability that but for counsel's alleged errors, he would not have pled. Also, the postconviction court found that even if counsel further argued the impeaching evidence, the result of the motion to dismiss hearing would not have

10

been different. (F3 at 9).

As to ground four, counsel's refusal to adopt Cruz's pro se filing to have his successor judge reconsider his motion to dismiss, the postconviction court again relied on Petitioner's assertions under oath that there was nothing else he wanted his attorney to do for him before he pled. (F3 at 10). Therefore, Petitioner could not show any prejudice. Also, even if counsel had adopted the pro se motion to reconsider the motion to dismiss, the postconviction court found the result would not have been any different, citing the stand your ground hearing transcript and order denying the motion. (F3 at 10).

As to ground five, cumulative error, the court concluded that because the individual claims lacked merit, there was no cumulative error. (F3 at 11).

On October 14, 2016, the Second District Court of Appeal per curiam affirmed the summary denial of Cruz's claims. (G2); *Cruz v. State*, 206 So. 3d 700 (Fla. 2d DCA 2016). Petitioner then filed the instant habeas petition, bringing the same five claims of ineffective assistance of counsel that he asserted in the state postconviction proceeding, and which are listed here above at page 2.

The habeas standard that is applied here is very familiar, and the Court need not repeat it at length. The state procedure and outcome must have resulted in a decision contrary to, or involved an unreasonable application of, clearly established

11

federal law. Or, it must have resulted in a decision based upon an unreasonable determination of the facts in light of the evidence presented. This standard is both mandatory and "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014); *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008) (citing 28 U.S.C. § 2254(d)); s*ee also Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280 (11th Cir. 2016) (recognizing the highly deferential standard given to state court determinations). A state court finding of fact is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Nejad,* 830 F.3d at 1289 (quoting *Wood v. Allen*, 558 U.S. 280, 301 (2010). Instead, if "reasonable minds" might differ, the federal court must defer to the state court findings. *Id*. (citation omitted).

> Under AEDPA, "[t]he question 'is not whether a federal court believes the state court's determination under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123,129 S.Ct. 1411 (2009) (quoting *Schriro*, 550 U.S. at 473, 127 S.Ct. 1933). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id*.

*Nejad*, 830 F.3d at 1290.

Here, the state postconviction court concluded Petitioner's counsel was not ineffective for the claimed various deficiencies specifically because Petitioner could not show prejudice from these deficiencies. In this case, Petitioner pled to

12

manslaughter in a negotiated plea agreement reserving the right to appeal the court's denial of his motion to dismiss. When he pled, he swore under oath that there was no investigation, discovery, or work he wished his counsel to do before he pled.

Petitioner swore while tendering his plea there was nothing else he wished his attorney to do, such as file a motion for rehearing (ground one) or adopt his pro se motion to have the new circuit judge rehear his motion to dismiss (ground four). As to the claimed deficiencies which occurred at the motion to dismiss hearing (burden shifting in ground two, and failure to impeach witnesses in ground three), these defects could have been cured by going to trial and having the jury determine whether Petitioner acted in self-defense after counsel fleshed out these issues. But Petitioner did not want to risk a jury verdict of murder and avoided this risk by entering into a favorable plea agreement. The postconviction court found that where Petitioner swore there was no further work he wished his attorney to do, he had failed to show that but for counsel's alleged failures, he would not have pled and would have insisted on going to trial.

The state court decision is not contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. Nor is the state decision based on an unreasonable determination of the facts in light of the evidence presented. The instant petition primarily raises issues of state law with the state

courts' application of Florida's "stand your ground" immunity.

Ground one as stated differs somewhat between the petition and Petitioner's memorandum, compare Doc. 1 at 4 *with* Doc. 2 at 2.  Likewise, the reference to a jury instruction in this ground is somewhat unclear as Petitioner pled guilty after a hearing, although the state trial court did cite the jury instruction in its order, to show legal elements.  (A at 173).

The gravamen of ground one is that counsel was ineffective for failing to move for rehearing after the court denied his pretrial motion to dismiss his second-degree murder charge based on claimed immunity under Florida's stand your ground statute.  The basis for this claim is that the trial court erred in its analysis of "you can't bring a gun to a fistfight," and that error requiring comparable force was apparent only with the court's final ruling, which should have been corrected by a motion for rehearing.

This claim was decided on the merits by the state postconviction court based on Petitioner's statements at his guilty plea.  During that plea colloquy, Petitioner stated there was no other work he wished his counsel to do.  Therefore, the postconviction court concluded he could not show prejudice in counsel's failing to move for rehearing because Petitioner could not show a reasonable probability he would not have pled to the reduced charge but for this failing.  The postconviction court's ruling

is not an unreasonable application of a clearly established federal law. If such clearly established law has been violated by this ruling, Petitioner does not specify what federal law.

Respondent correctly points out that in ground one Petitioner is really challenging an issue of state law, the application of the statutory immunity procedure. This is evident by Petitioner's argument the state court misapplied *Montanez v. State*, 24 So. 3d 799 (Fla. 2d DCA 2010) to his case. (Doc. 2 at 4–10; A:172–73).

This state law claim of error does not raise a federal issue cognizable under § 2254 even when framed as a denial of due process. As the Eleventh Circuit has held that questions of state law "rarely raise issues of federal constitutional significance, because a state's interpretation of its own laws" does not involve a federal constitutional question, *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991), even where the issue is couched in terms of equal protection and due process or other constitutional provisions. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Williams v. Allen*, 598 F.3d 778, 800–02 (11th Cir. 2010) (affirming district court's denial of federal habeas and relying on state law to establish whether jury instructions were properly given).

Ground two is somewhat unclear, stating that Petitioner's lawyer failed to argue properly the trial court's abuse of discretion when considering Petitioner's right not to

testify, which permitted the State to shift the burden of proof to Petitioner. Petitioner did not testify at the pretrial hearing. Petitioner asserts that the State improperly argued that to assert self-defense, Petitioner had to testify to establish his reasonable fear.

Though Petitioner claims counsel was ineffective for not "properly arguing" he did not have to testify to establish entitlement to self-defense, he acknowledges that counsel *did object* to the State's claim he was required to testify: "Petitioner contends Trial Counsel clearly made an objection and Trial Court clearly abused its discretion in considering. *See* Court record page 430 lines 10-11 [A at 662]." (Doc. 2 at 11–12).

This ground is near frivolous. The hearing transcript shows the paucity of this claim:

> [State's argument]: … I submit to you since we never heard from Mr. Cruz – now, he's not obligated to testify. But we have never heard any testimony about what he actually believed.
> [Defense counsel]: That's improper argument, Your Honor.
> THE COURT: Let's move on please.

(A at 662).

Therefore, counsel objected to this argument and the court seemingly sustained it by telling the State to "move on." This incident meant nothing in the case. Nothing in the trial court's order suggests Petitioner's motion was denied because he did not

16

testify.

Though a defendant may be able to establish self-defense through other evidence when he does not testify, it is more difficult to establish the claimed reasonable fear of imminent death or great bodily harm.  Here, the trial court's denial of immunity was based on Petitioner's failing to show his entitlement to this statutory immunity by a preponderance of the evidence.  Petitioner has not overcome the presumption of correctness of the state court findings with clear and convincing evidence.  *Nejad*, 830 F.3d at 1289.

In his third ground, Petitioner claims ineffectiveness of counsel, because his lawyer failed to "raise the trial court's failure to properly weigh" witness credibility.  This is, in effect, a complaint about the sufficiency of the State's evidence at the evidentiary hearing.  Petitioner's counsel at that hearing was a lawyer known in the Tampa Bay area for competence.  Witness bias and impeachment was well addressed by that lawyer at the hearing.  (Doc. 2 at 20–22).  What is missing from this ground, because it is missing from this record, is allegations of *specific* lawyer ineffectiveness.

Petitioner objects to the trial court's findings but does not explain how they would have changed by specific tasks his lawyer did not do (and Petitioner foreswore all such tasks at his plea hearing).  He does not explicate how, but for these

17

unspecified failings, he would not have pled to 12 years for shooting an unarmed man in the head with his Glock .40 cal. The trial court's findings were not an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." The trial judge merely made credibility findings based on the evidence. Moreover Petitioner does not surmount his greater burden of establishing how the postconviction court's conclusion is an unreasonable application of *Strickland*.

In his penultimate ground, Petitioner asserts that his lawyer should have adopted Petitioner's pro se motion that asked the successor trial judge to revisit his motion to dismiss already denied by the prior assigned judge, Chief Judge Ficarrotta. He cites a rule of judicial administration which allows for a successor judge to revisit an issue ruled on by a disqualified judge.

This ground is frivolous. The pro se motion had no chance of success after the state court's chief judge, who undertook full multi-day hearings and a 17-page order, denied the motion. The denial is entirely consistent with the facts shown at the hearing. Moreover, even if this failure to adopt a procedurally improper pro se motion could be found as lawyer deficiency, there is no prejudice. The ruling denying the "stand your ground" pretrial dismissal was sound and proper. If the successor judge had ruled differently, she would have been committing error.

Further, this issue was waived by the guilty plea.  As the postconviction court found, Petitioner stated clearly in his plea colloquy that there was no further work he wished his attorney to do.

Petitioner's fifth and final ground argues cumulative error, without much other content.  As there was no individual error, there can be no cumulative error.  *Ballard v. McNeil,* 785 F. Supp. 2d 1299, 1337 (N.D. Fla. 2011) ("[A] cumulative- error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.") (citation omitted).

The Court denies the petition (Doc. 1) as without merit.  The Clerk is directed to enter judgment against Petitioner and close the case.  Because no reasonable jurist would conclude that Petitioner shows a colorable denial of a federal right in this petition, a certificate of appealability is denied.  Given this finding, an *in forma pauperis* appeal may not proceed.

**DONE AND ORDERED** at Tampa, Florida, on October 23, 2020.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Petitioner, *pro se*
Counsel of Record